# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Wallace James Beaulieu, | Civil No. 11-2593 (DWF/JFD) |
| Plaintiff, | |
| v. | |
| Lucinda Jesson, *in her personal capacity*; Dennis Benson, Kevin Moser, Terry Kniesel, Sara Kulas, Robert Rose, Jane Stinar, Mike Anderson, and Jay Little, *all in their official and personal capacities*; Blake Carey and Shireen Gandhi, *in her official capacity*. | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

## INTRODUCTION

This matter is before the Court on Defendants Lucinda Jesson,[1] Dennis Benson, Kevin Moser, Terry Kniesel, Blake Carey, Sara Kulas, Robert Rose, Jane Stinar, Mike Anderson, and Jay Little's (collectively, "Defendants") motion for summary judgment. (Doc. No. 67.) Plaintiff Wallace James Beaulieu opposes the motion. (Doc. No. 79.) For the reasons set forth below, the Court grants in part and denies in part the motion.

---

[1] Lucinda Jesson was the Commissioner of the Minnesota Department of Human Services from 2011 to 2015, the time relevant to this complaint. The claims against her remain in her personal capacity. The claims against her in her official capacity have been replaced by Shireen Gandhi, the current Commissioner. (*See* Doc. No. 89.)

## BACKGROUND

Plaintiff Wallace James Beaulieu is civilly committed to the Minnesota Sex Offenders Program ("MSOP"). (Doc. No. 81 ("Beaulieu Decl.") ¶ 1.) Beaulieu is a member of the Leech Lake Band of Ojibwe and practices the Native American religion associated with the Leech Lake Band. (*Id.* ¶ 2.)

In 2011, the time relevant to this dispute, Beaulieu resided in MSOP's Moose Lake facility. (Doc. No. 80 ("Baxter-Kauf Decl.") ¶ 6, Ex. E ("Beaulieu Dep.") at 24.) MSOP policy[2] prohibited clients from wearing necklaces[3] outside of their clothing. (Doc. No. 91 ¶¶ 2, 4, 6, Exs. A, C, E.) Clients were allowed to wear necklaces under their clothing. Failure to comply with MSOP policy could result in the issuance of a Behavioral Expectations Report ("BER"). (*See* Doc. No. 16 ¶ 20, Ex. E.) Beaulieu was issued a BER in connection with violations of the necklace portion of the dress code on four separate occasions.

---

[2] The relevant policies are the Client Hygiene/Dress Code, Client Jewelry, and Spiritual Practices policies. The dress code mandated that "[n]ecklaces must be worn under clothing, with the majority of the necklace, including any connected charms and/or pendants not visible to others." (Doc. No. 91 ¶ 2, Ex. A at 4.) The jewelry policy did not address wearing under clothing but limited the length and gauge of any necklace worn. (Doc. No. 91 ¶ 4, Ex. C at 16.) The spiritual practices policy mandated that "[n]ecklaces identified as spiritual items must be worn under the clothing." (Doc. No. 91 ¶ 6, Ex. E at 26.)

[3] While the item at issue is a religiously significant medicine bag, (*see infra* note 4), the wearing of such was governed by MSOP policies that use the word "necklace." A medicine bag is a religiously significant leather pouch which holds medicines and other spiritually significant items. (Beaulieu Dep. at 38-39.) When referring to the policies, the Court will use "necklace"; when referring to Beaulieu's medicine bag, the Court will use "medicine bag."

On the morning of August 31, 2011, Defendant Stinar, a Security Counselor at the facility, asked Beaulieu to put a medicine bag[4] he was wearing underneath his shirt. (Baxter-Kauf Decl. ¶ 2, Ex. A.)  Beaulieu refused. (*Id.*)  Stinar asked again later that morning. (*Id.*)  Beaulieu refused for a second time. (*Id.*)  Stinar then issued a redirection BER charging Beaulieu with failure to comply. (*Id.*)  This BER did not have any restriction listed, meaning that Beaulieu's only consequence was the issuance of the BER. (*See id.*)

The next day, September 1, 2011, Beaulieu again wore his medicine bag on top of his shirt and Stinar asked him to put it underneath his shirt. (*Id.* ¶ 3, Ex. B.)  Beaulieu again refused. (*Id.*)  Stinar issued a minor violation BER for failure to comply and improper dress with a 7-day canteen ordering restriction. (*Id.*)

Later that same day, a different Security Counselor, Defendant Little, asked Beaulieu to put the medicine bag under his shirt. (*Id.* ¶ 4, Ex. C.)  Beaulieu yet again refused. (*Id.*)  Little issued a minor violation BER for failure to comply with a 7-day lower dayroom restriction. (*Id.*)

---

[4] Beaulieu's complaint describes the item at issue as a "necklace." (Doc. No. 1 at 8.)  Beaulieu later asserted that he was wearing two items around his neck at the time: a tomahawk necklace and a medicine bag. (*See* Beaulieu Dep. at 43; Beaulieu Decl. ¶ 10.)  However, Beaulieu did not receive the tomahawk necklace until the next day. (Doc. No. 69 ("Alexander Decl.") ¶ 3, Ex. B.)  The Court therefore makes the inference most favorable to the nonmoving party that can be reasonably drawn from the evidence: that Beaulieu was wearing the medicine bag at all relevant times. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

On September 6, 2011, Stinar again asked Beaulieu to put his medicine bag underneath his shirt. (*Id.* ¶ 5, Ex. D.) Beaulieu again refused. (*Id.*) Stinar issued a minor violation BER for failure to comply and improper dress with a 14-day lower dayroom restriction to run consecutively with the previously imposed restriction. (*Id.*)

Beaulieu filed the current action on September 8, 2011. (Doc. No. 1.) He alleges violations of his First Amendment right to free exercise of religion,[5] his Fifth and Fourteenth Amendment rights to procedural due process, and his Fourteenth Amendment right to equal protection. (*Id.* at 8-10.) Beaulieu does not dispute the facial constitutionality of the policies, but instead claims that the policies are applied unconstitutionally. (*See* Doc. No. 92 at 4.) This case was stayed pending the resolution of a related class action. (Doc. Nos. 21-22.) The Court lifted the stay on October 3, 2022. (Doc. No. 40.) Defendants filed this motion for summary judgment on December 2, 2024. (Doc. No. 67.) Beaulieu opposes the motion. (Doc. No. 79.)

---

[5] The complaint describes the First Amendment allegation as a violation of his right to free speech and expression. (Doc. No. 1 at 8-10.) Beaulieu later clarified that he intended to allege a violation of his right to free exercise of religion. (Doc. No. 79 at 23.)

Beaulieu filed the complaint *pro se* but has since retained counsel. His *pro se* complaint is entitled to liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that *pro se* complaints are entitled to liberal construction); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (explaining that *pro se* complaints should be construed in a way that permits the claim to be considered under the proper legal framework).

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank*, 92 F.3d at 747. However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (alteration in original) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## II. First Amendment Free Exercise Claim

To succeed on a claim under the Free Exercise Clause of the First Amendment, a plaintiff must establish that the defendant's challenged policies and practices place a "substantial burden" on their ability to practice their religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *see also Daywitt v. Harpstead*, No. 24-cv-214, 2025 WL 901598, at *3-4 (D. Minn. Mar. 25, 2025) (applying this standard to a free exercise claim by another MSOP client). Beaulieu has failed to show that MSOP's policies impose a substantial burden on his religious practice. Indeed, Beaulieu testified that wearing his medicine bag under his shirt would not impact his religious practice. (Beaulieu Dep. at 74, 79.) The policy therefore fails to burden his ability to practice whatsoever, let alone substantially.[6] Beaulieu's First Amendment free exercise claim fails on the merits and cannot survive summary judgment.

## III. Fifth and Fourteenth Amendment Due Process Claims

Beaulieu agrees with Defendants that the Fifth Amendment due process claim cannot survive because the federal government is not implicated by Beaulieu's claims. (Doc. No. 68 at 18; Doc. No. 79 at 30.) Beaulieu did not address the Fourteenth

---

[6] Parties also dispute the application of the modified *Turner* factors. *See Stone v. Jesson*, No. 11-cv-951, 2019 WL 7546630, at *4-5 (D. Minn. Dec. 3, 2019) (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)). The Court need not address application of the factor test because the evidence shows there was no substantial burden, the threshold issue.

Amendment due process claim in his response brief, (*see generally* Doc. No. 79), and therefore waived it. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009). Defendants are entitled to summary judgment on these claims.

## IV.     Fourteenth Amendment Equal Protection Claim

To state a claim of unequal application of a policy under the Equal Protection Clause, a plaintiff must show that the defendant treated them differently than similarly situated individuals. *See Am. Fam. Ins. v. City of Minneapolis*, 836 F.3d 918, 921 (8th Cir. 2016); *Daywitt*, 2025 WL 901598, at *5. Beaulieu alleges that he was treated differently by MSOP staff because of his race and religion. While Beaulieu's complaint only alleges one specific incident of unequal treatment that was later disproven,[7] Beaulieu attempts to make a claim of a pattern of unequal treatment. (*See* Doc. No. 79 at 31.)

Viewing evidence in the light most favorable to the nonmoving party, Beaulieu has met his burden to show specific facts in the record that create a genuine issue of material fact for trial. Beaulieu named multiple MSOP clients who wore religious necklaces outside of their shirts without receiving a BER. (Beaulieu Dep. at 45-62; Beaulieu Decl. ¶¶ 16-20.) Further, MSOP client Lionel Yazzie testified that Native American clients faced issues, including BERs for wearing medicine bags, that other

---

[7]     The complaint alleges that a Caucasian client received a BER for refusal to put a necklace under his shirt on the same day as Beaulieu and that the Caucasian client did not receive consequences, but Beaulieu did. (Doc. No. 1 at 9.) The evidence shows that the other client actually received a more severe restriction than Beaulieu. (Doc. No. 16 ¶ 11.)

cultures did not face.  (Baxter-Kauf Decl. ¶ 8, Ex. G at 18, 24-28.)  Beaulieu puts forth evidence sufficient to show a genuine dispute as whether he was treated differently than similarly situated clients.  Summary judgment is therefore inappropriate.

V.    **Damages**

    A.    **Monetary Damages**

Monetary damages against the Defendants in their official capacities were dismissed by the Court previously.  (Doc. No. 49.)  Monetary damages against the Defendants in their individual capacity must now also be dismissed because Beaulieu has not put forth evidence of compensable injury.  Emotional distress damages can be awarded in § 1983 actions, but there must be proper proof of injury.  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307-08 (1986).  Beaulieu alleges emotional distress, specifically that he attempted suicide.  But he admits that his suicide attempt was not related to the BERs at issue here.  (Beaulieu Dep. at 106-10.)  Further, a psychological evaluation of Beaulieu found no injuries as a result of the BERs in question and no need for treatment in connection to these incidents.  (Alexander Decl. ¶ 10, Ex. I at 95.)  There is insufficient evidence to show the injury necessary for monetary damages.

    B.    **Injunctive Relief**

Beaulieu "seeks injunctive relief including consistent enforcement of the jewelry policy and dress code policy, as well as a specific exception going forward which will specifically exclude non-harmful religious and cultural items, such as the medicine bag and tomahawk necklace, from the jewelry policy and dress code policy." (Doc. No. 79 at 36.)  While the relevant policies have been changed since 2011, Beaulieu maintains

that the policies are unconstitutional as applied. (Doc. No. 92 at 4-5.) "In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009) (quoting *Mo. Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007)). Because there is a reasonable expectation that the alleged wrong will be repeated, his claim is not moot. *Cf. Daywitt v. Minnesota*, No. 14-cv-4526, 2015 WL 4094199, at *4-5 (D. Minn. July 6, 2015) (finding that claims against MSOP for a policy prohibiting yarmulkes was moot because MSOP changed its policy to allow yarmulkes).

Beaulieu may assert injunctive relief against Defendants in their official capacities. However, § 1983 does not permit injunctive relief against defendants in their individual capacities. 42 U.S.C. § 1983; *see also Thompson v. Buroker*, No. 16-cv-943, 2019 WL 1118915, at *4 (D. Minn. Jan. 17, 2019). Therefore, Beaulieu's requested relief remains only for injunctive relief against official-capacity Defendants.

## CONCLUSION

Beaulieu alleges violations of his constitutional rights under the First, Fifth, and Fourteenth Amendments. The First Amendment claim must be dismissed because Beaulieu fails to show substantial burden on his religious exercise. The Fifth and Fourteenth Amendment due process claims were waived by Beaulieu and are also dismissed. The Fourteenth Amendment equal protection claim survives, only insofar as Beaulieu requests injunctive relief from Defendants in their official capacities.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Doc. No. [67]) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The motion is **GRANTED** as to Plaintiff's First Amendment claim, Fifth Amendment claim, Fourteenth Amendment due process claim, and Fourteenth Amendment equal protection claim against Defendants in their individual capacities.

    b. The motion is **DENIED** as to Plaintiff's Fourteenth Amendment equal protection claim only insofar as Plaintiff requests injunctive relief against the Defendants in their official capacities.

2. Plaintiff's First Amendment claim, Fifth Amendment claim, and Fourteenth Amendment due process claim are **DISMISSED WITH PREJUDICE**.

3. Defendant Lucinda Jesson is **TERMINATED** as a party in this case.

Dated: April 15, 2025
                                              s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge